UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JASON S. RICHARDS,

                        Plaintiff,

          -against-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
----------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
20-CV-2218 (JMA)

FILED
CLERK
3:12 pm, Feb 07, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge**:

Plaintiff Jason Richards filed this appeal challenging a final determination by the Defendant, the Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits.

Presently before the Court are the parties' cross-motions, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

## I. BACKGROUND

**1. Plaintiff's Testimony and the Medical Records**

Plaintiff, who was born in 1978, applied for disability benefits on February 24, 2017, alleging disability since that date. Plaintiff alleges that he is disabled due to mental impairments, including General Anxiety Disorder ("GAD"), Social Anxiety Disorder, Bipolar Disorder, and Post-Traumatic Stress Disorder ("PTSD"). Plaintiff testified at a video hearing before ALJ Benjamin Chaykin ("ALJ Chaykin") on January 30, 2019.

In high school, Plaintiff was in special education classes because of emotional problems and difficulty reading. (Tr. 41.) Plaintiff only finished 11th grade and then failed his GED test. (Tr. 30.) Plaintiff is single and lives with mother and brother.

Plaintiff experienced a few notable traumas in his life. He was molested by a neighbor as a child. He first reported this molestation when he began attending therapy sessions in 2016. In 2004, Plaintiff's father died. In some treatment notes and in his hearing testimony, Plaintiff attributes some of his mental issues, including his lack of motivation, to the death of his father. (Tr. 34.) In March 2018, Plaintiff was sexually assaulted. Plaintiff often goes on long walks alone at night. During one of these walks, Plaintiff was assaulted at knifepoint and then his male assailant performed oral sex on Plaintiff against his will. (Tr. 32, 321.) Plaintiff reported this assault to the police, but they never found the assailant. (Tr. 32.)

During the day, Plaintiff watches TV and plays video games on his computer, including multiplayer online games. Plaintiff helps inside and outside of his house, cleaning, doing his laundry, caring for pets, mowing the lawn, and shoveling snow. Plaintiff does not like to be seen by his neighbors when doing yardwork outside and will go inside if he sees them. (Tr. 14, 36, 278)

Plaintiff last worked as a maintenance helper for a pool business, along with his brother. After approximately ten years at this job, plaintiff left in 2007 (or possibly 2009) because his brother stopped working there. (Tr. 151–52, 157.) Plaintiff testified that he felt more comfortable working with his brother and that "I can't work without anybody else around me but family, I guess." (Tr. 33.)

Plaintiff does not have a driver's license—his expired in 2011. (Tr. 41.) With the exception of Plaintiff's therapy sessions, medical appointments, and participation in the "PROS"

program, Plaintiff appears to have little contact and interaction with individuals outside of his mother and brother.  Plaintiff goes shopping with his mother twice a week for 25 minutes each time.[1]  (Tr. 170.)  As noted earlier, Plaintiff takes long solitary walks late at night to get exercise and manage his anxiety.  Since the 2018 assault, has confined these long walks to his neighborhood.

Plaintiff first began receiving treatment for his mental health issues in the fall of 2016.  Prior to 2016, Plaintiff had only been evaluated once by a school psychologist in fifth grade.  In early September 2016, Plaintiff's internist diagnosed him with anxiety and referred him to a psychiatrist.  Between September 2016 and November 2016, Plaintiff saw Hayden Cruz, LMSW.  (Tr. 238–43, 250–251.)  Cruz diagnosed Plaintiff with anxiety disorder.

On December 14, 2016, Plaintiff began treatment with Psychiatric Nurse Practitioner Lynn Mitchell.  Plaintiff informed Nurse Mitchell that he was having panic attacks almost every day and that he felt "down and depressed."  (Tr. 232.)  Plaintiff also told Nurse Mitchell about the sexual abuse he had suffered as a child, which he had never discussed with anyone before.  (Tr. 232.)  Nurse Mitchell diagnosed Plaintiff with GAD, Social Anxiety Disorder, Panic Disorder with Agoraphobia, and MDD-Recurrent Moderate.  (Tr. 231.)  Nurse Mitchell prescribed Plaintiff Klonopin, Seroquel, and Celexa.  (Tr. 231.)  With some adjustments in dosage, Plaintiff has stayed on these or similar medications since 2016.  Gabapentin was added to his regimen in February 2017 and Prozac replaced Celexa sometime in 2018.[2]

---

[1]  These shopping trips are discussed in certain treatment notes and Plaintiff's written functional report.  At the hearing, and in one treatment note, Plaintiff reported that he no longer goes shopping with his mother.

[2]  In addition to taking multiple medications, Plaintiff also uses marijuana daily.  At the hearing, Plaintiff testified that he only takes small doses of marijuana in order to calm himself down between his medications.  (Tr. 37.)  Treatment notes at various points indicate that Plaintiff has had issues with using marijuana and alcohol along with his prescribed medications.  (See, e.g., Tr. 346–48.)  In 2018, one provider threatened to terminate Plaintiff as a patient if he continued to use drugs and alcohol while taking medication.  (Tr. 364.)  In another progress note from June 2018, the same provider noted that Plaintiff mixes alcohol, marijuana, and other medications in order "get high."  (Tr. 347.)

3

Plaintiff regularly saw Nurse Mitchell or Ms. Cruz until mid-2018 when he had to switch providers because Nurse Mitchell was switching to another facility.  (Tr. 40, 298–99.)

In April 2018, Plaintiff began to see Dr. Cesar Garces of Community Counseling & LCSW Services ("Community Counseling").  Dr. Garces is a licensed social worker with a Ph.D. in social work.  (Pl.'s Br. at 23.)  In July 2018, Plaintiff began to see Dr. Richard Arango, who is also affiliated with Community Counseling.  Plaintiff generally saw Dr. Garces weekly and Dr. Arango monthly through the date of his January 2019 hearing before the ALJ.

At the hearing and in various treatment notes, Plaintiff reported anxiety, nervousness, and panic attacks.  He reported feeling overwhelmed in small rooms and crowds, even when he is by himself.  He also reported racing thoughts and depression.  The parties' briefs summarize, in greater depth, the details of the relevant treatment notes.

The treatment notes from the various providers also contain objective mental status evaluations, in which the providers report their findings in various areas.  Dr. Arango's notes report findings in the areas of:  General Appearance; Dress; Motor Activity; Insight; Judgment; Affect; Mood; Orientation; Memory; Attention/Concentration; Thought Content; Perception; Flow of Thought; Interview Behavior; and Speech.  In these areas, Dr. Arango's records for each visit noted, with only very limited exception, normal findings with annotations such as "Appropriate"; "Unremarkable"; "Good"; and "Intact."  (Tr. 321, 325, 328, 330, 332, 334, 336.)  The treatment notes of Dr. Garces recorded findings in the areas of Cognitive Functioning, Mood, Functional Status, and Affect and "Interpersonal."  Dr. Garces' findings in these areas between April and June 2018 were somewhat mixed.  However, Dr. Garces' findings in these areas from July 2018 through January 2019, when the hearing occurred, were generally normal.  The notes of Nurse Mitchell and Ms. Cruz do not contain a formal checklist of mental status areas that were regularly recorded

4

for each session. However, their notes still contain evaluations of Plaintiff's mental status and record some intermittent abnormal findings, including notations that Plaintiff appeared "anxious" and had a "constricted affect."

Beginning in August 2017, Plaintiff—after some initial hesitancy—began to attend classes and group therapy through the Federation of Organizations PROS program.[3]  (Tr. 279–80, 286.) In August 2017, he reported to Nurse Mitchell that that he had been going to PROS, but not on a regular basis and that he was suffering through terrible anxiety during the classes. (Tr. 286.) By late September 2017, Plaintiff was attending all of the groups he enrolled in and was spending time in the common area engaging with other program members, which he reported he would not have been able to do six months earlier. (Tr. 291.) In January 2018, Plaintiff reported that he was consistently attending three groups at PROS twice per week. (Tr. 293.) In March 2018, Plaintiff reported that although he continued to attend the groups at PROS he did not participate in the groups and instead played with an iPad during the group sessions to distract himself. (Tr. 300.) In March and May 2018, Plaintiff reported that he was planning on increasing his attendance at PROS to three days per week. (Tr. 302, 311.) In late May 2018, Plaintiff reported that he was attending the PROS program three days per week and had recently begun attending new groups in the program. (Tr. 317.) At the same visit, Plaintiff reported that he had been more social within the program and tended to spend time between groups with two or three people. (Tr. 317.)

---

[3] As one court has explained:

> The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, inter alia, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling and health assessment and symptom monitoring and medication management.

Jillian A. v. Comm'r of Soc. Sec., No. 20-CV-6512SR, 2021 WL 4481190, at *1 n.1 (W.D.N.Y. Sept. 30, 2021) (citing www.omh ny.gov).

According to a December 2018 progress note from Dr. Garces, Plaintiff reported that he "started to participate in class" and "feels good about it." (Tr. 375.) At the hearing before the ALJ, Plaintiff explained that he was now in his third semester at PROS. (Tr. 42.)

**2. The ALJ's Decision**

The ALJ found that Plaintiff has the following serve impairments—affective disorder, anxiety disorder, and PTSD. In determining Plaintiff's residual functional capacity ("RFC"), the ALJ weighed the following opinions about Plaintiff's mental limitations:

(1) a November 3, 2018 opinion from Dr. Arango concerning Plaintiff's limitations from MDD, GAD, Bipolar Disorder, PTSD, and Social Anxiety Disorder;

(2) an August 20, 2018 opinion that appears to have been authored by Dr. Garces and Dr. Arango concerning limitations from the same conditions;

(3) a June 6, 2017 opinion from Nurse Mitchell concerning limitations from Plaintiff's MDD, GAD, Social Anxiety Disorder, and Panic Disorder;

(4) an April 19, 2017 opinion from Dr. Paul Herman, a consultative examiner, concerning Plaintiff's limitations from GAD with Panic Features; and

(5) a May 1, 2017 opinion Dr. E. Kamin, non-examining state psychological consultant concerning Plaintiff's limitations.

Plaintiff's treating providers largely opined that Plaintiff had "marked" limitations or "very limited" functioning in many areas, whereas both Dr. Herman and Dr. Kamin opined that Plaintiff had only "mild" limitations. The ALJ afforded all five opinions in the record only "limited weight."

The ALJ ultimately determined that Plaintiff had moderate limitations in four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing himself. (Tr. 13–14, 16–27.) Based on these moderate limitations, the ALJ determined that Plaintiff had a RFC to perform a full range of work provided that Plaintiff is: (1) limited to simple, routine

6

repetitive tasks; (2) limited to occasional interaction with supervisors and co-workers; and (3) has no interaction with the public.  Although this RFC precluded Plaintiff's prior employment in pool maintenance, the ALJ found he could still work as a salvage worker, hand packager, or packaging machine operator, leading to the ALJ's conclusion that Plaintiff was not disabled.

## II.  DISCUSSION

### A.  Standard of Review

In reviewing a denial of disability benefits by the Social Security Administration ("SSA"), the role of the district court is not to review the record de novo, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'"  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it."  State of New York ex rel. Bodnar v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990).  An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force."  Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See also Shalala v. Schaefer, 509 U.S. 292, 296–97 & n.1 (1993). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B. Social Security Disability Standard**

The Social Security Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520; see Rosa, 168 F.3d at 77. In this analysis, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2006) (second alteration in original) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)).  As part of the fourth step, the Commissioner determines the claimant's residual functional capacity before deciding if the claimant can continue in his or her prior type of work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do."  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)).

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Green-Younger, 335 F.3d at 106 (quoting 20 C.F.R. § 404.1527(d)(2)); Bonneau v. Astrue, No. 5:13-CV-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

Where the Commissioner determines that the opinion of a treating physician should not receive controlling weight, she must "give good reasons in [the] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(c)(2); see Manfra v. Colvin, No. 15-CV-2844, 2016 WL 4434820, at *13 (E.D.N.Y. Aug. 22, 2016); Perez v. Astrue, No. 07-CV-958, 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009).  An ALJ's failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is ground for a remand."  Snell, 177 F.3d at 134 (internal quotation marks omitted).

When a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the relevant regulations. Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004); see also 20 C.F.R. §§ 404.1527(c), 416.927(c). "These same factors are considered when evaluating other medical opinion evidence." Hernandez v. Saul, No. 18-CV-832, 2019 WL 4805211, at *3 (E.D.N.Y. Sept. 30, 2019).

**C. Analysis**

**1. The ALJ's Weighing of the Opinion Evidence Was Supported by Substantial Evidence**

Plaintiff argues that the ALJ improperly weighed the opinions from his providers and, in doing so, erred in determining Plaintiff's RFC. As explained below, the ALJ's weighing of these opinions was justified by adequate reasons and supported by substantial evidence.

**a. Dr. Arango's November 3, 2018 Opinion**

Plaintiff asserts that the ALJ erred in giving only limited weight to the November 3, 2018 opinion of his treating psychiatrist, Dr. Richard Arango. The ALJ gave Dr. Arango's opinion limited weight because it was "inconsistent with objective mental status examination findings" and Plaintiff did not receive any "inpatient treatment during the relevant time period." (Tr. 16.)

Plaintiff insists that the ALJ's reliance on his lack of inpatient treatment was erroneous. The Court disagrees. A lack of inpatient treatment is a relevant, but not dispositive, consideration. The ALJ did not err in relying on this factor because this was not the only reason the ALJ gave for discounting Dr. Arango's opinion. Plaintiff's lack of inpatient treatment in conjunction with the objective mental status examination findings in the record—which are discussed further below— justified affording Dr. Arango's opinion only limited weight.

Plaintiff also attacks the ALJ's other reason for discounting Dr. Arango's opinion. Plaintiff contends that the purported inconsistency between Dr. Arango's opinion and the objective mental status examination findings do not constitute a sufficiently specific and "good" reason to justify affording Dr. Arango's opinion limited, rather than controlling, weight. The Court disagrees. Dr. Arango opined, inter alia, that Plaintiff was markedly limited in 13 of the 20 categories listed on the medical source statement he filled out, including: (1) the ability to understand and remember one or two step directions; (2) the ability to sustain ordinary routine without supervision; (3) the ability to make simple work related decisions; and (3) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.[4] (Tr. 388–394.) Dr. Arango also opined that Plaintiff's impairments would result in him being absent more than three times per month.

There was, however, sufficient evidence for the ALJ to discount Dr. Arango's opinion based on Plaintiff's mental status evaluations. Plaintiff generally saw Dr. Arango monthly between July 2018 and December 2018. For each visit, Dr. Arango's treatment records reported Plaintiff's mental status in the areas of: General Appearance; Dress; Motor Activity; Insight; Judgment; Affect; Mood; Orientation; Memory; Attention/Concentration; Thought Content; Perception; Flow of Thought; Interview Behavior; and Speech. For each of these areas, Dr. Arango's records for each visit noted, with only very limited exception, normal findings with annotations such as "Appropriate," "Unremarkable," "Good," "Intact." (Tr. 321, 325, 328, 330, 332, 334, 336).

---

[4] Notably, Dr. Arango was unable to opine on whether Plaintiff's abilities to: (1) accept instructions and respond appropriately to criticism from supervisors; (2) respond appropriately to changes in the work setting; (3) work in coordination with or proximity to other without being distracted by them; and (4) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without a unreasonable number and length of rest periods.

11

Other information in Dr. Arango's treatment notes also supported the ALJ's weighing of Dr. Arango's opinion and the ALJ's ultimate RFC determination.  Dr. Arango's notes from Plaintiff's visit on August 8 state—under the heading of "Symptom Description and Subjective Report"—"Improving from depression, anxiety and moodiness but still moody."  (Tr. 326.)  Subsequent notes from August and September 2018 state, under the same heading, that Plaintiff is "Improving from anxiety, depression, and moodiness."  (Tr. 328, 330.)  While a note from early November 2018 states "Anxiety, moodiness and depression," the same note also reports normal findings in Plaintiff's objective mental status evaluation.  (Tr. 332.)  A November 28, 2018 treatment note identifies Plaintiff's mood as "Depressed, Anxious," but reports no other notable findings on his objective mental status evaluation.  (Tr. 334.)  According to this note, Plaintiff reported that had been depressed and anxious and was not sure if he was skipping medication.  (Tr. 334.)  For Plaintiff's next visit, in December 2018, Dr. Arango noted normal findings in all areas for Plaintiff's mental status evaluation and recorded Plaintiff's report of "[I]mproving anxiety and depression."  (Tr. 336.)  Each of Dr. Arango's progress notes also states—under "Comments Regarding Medication"—"Much improved from previous visit."  (Tr. 327, 329, 331, 333, 335, 337.)  It is also notable that Dr. Arango's treatment notes contain scant details about Plaintiff's reported symptoms or other aspects of Plaintiff's treatment including his attendance of classes and group therapy through the PROS program.

Under all the circumstances here, Plaintiff's mental status evaluations, in conjunction with Plaintiff's lack of inpatient treatment, constituted substantial evidence to discount Dr. Arango's opinion.

### b. The August 20, 2018 Opinion

Plaintiff also challenges the ALJ's analysis of the August 20, 2018 opinion. The ALJ stated that the two signatures on this opinion were illegible. Consequently, the ALJ did not identify which providers authored and signed the August 2018 opinion. Instead, the ALJ simply noted that this opinion was "completed by two providers." (Tr. 17.) The ALJ ultimately gave this opinion limited weight, reasoning that "the record as a whole does not support greater than moderate limitations." (Tr. 17.)

While the ALJ noted that the signatures on the August 20, 2018 opinion were illegible, the document identifies one of the signatories as Dr. Garces. Plaintiff asserts that the second signatory is Dr. Arango. Plaintiff maintains that the second signature on the August 20, 2018 opinion matches the signature of Dr. Arango on a different document. Both Dr. Garces and Dr. Arango were treating Plaintiff at the time.

The Court assumes <u>arguendo</u> that the ALJ erred in failing to identify Dr. Garces as a signatory in his decision and that the ALJ should have inquired further into the identity of the second signatory, who appears to have been Dr. Arango. However, any such errors were harmless. First, the ALJ appropriately considered and weighed Dr. Arango's subsequent and more comprehensive opinion dated November 3, 2018, which covered three additional months of treatment. Given the ALJ's determination that Dr. Arango's November 3, 2018 opinion was only entitled to limited weight, there is no reason to believe that the ALJ would have weighed the August 20, 2018 opinion any differently if he had known that Dr. Arango was a signatory on that opinion. It is also notable that Dr. Arango had only seen Plaintiff twice prior to signing the August 20, 2018 opinion. Additionally, Dr. Garces—who holds a Ph.D. in social work—does not qualify as a treating physician for purposes of the treating physician rule. Under the circumstances, the

ALJ's rationale for affording only limited weight to the August 20 opinion was sufficient and supported by substantial evidence.  There was ample reason for the ALJ to discount the August 20, 2018 opinion, which stated, inter alia, that Plaintiff could not participate in a rehabilitation/treatment program and was not involved in an education or training program.  (Tr. 267.)  These responses are contradicted by Plaintiff's involvement in classes and group therapy through the PROS program.  Moreover, the August 20 opinion is internally contradictory as it indicates that Plaintiff is "very limited" in "understand[ing] and remember[ing] simple instructions," and yet is, somehow, only "moderately limited" in "understand[ing] and remember[ing] complex instructions." (Tr. 267 (emphasis added).)  There were ample reasons for the ALJ to afford only limited weight to the August 20, 2018 opinion.  As the ALJ explained, "the record as a whole does not support greater than moderate limitations."

### c. Nurse Mitchell's June 6, 2017 Opinion

Contrary to Plaintiff's claim, the ALJ did not err in affording limited weight to Nurse Mitchell's June 6, 2017 opinion.  The ALJ reasoned that her opinion was "inconsistent with objective mental status examination findings in treatment notes, which are mostly normal, with some intermittent abnormal findings, but no inpatient treatment required, no psychotic symptoms noted in records, and indicated independent functioning, such as taking care of a pet, and activities of daily living such as yard work, chores, and going out at night."  (Tr. 17.)

Nurse practitioners such as Nurse Mitchell qualify as "other sources" rather than "treating physicians."  While an ALJ is "certainly free to consider the opinions of" "other sources" such as nurse practitioners "in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).  The reasons set out in the ALJ's decision

were supported by the record and more than sufficient to justify the limited weight afforded to Nurse Mitchell's opinion.[5]

### 2. The ALJ's RFC Determination Was Supported by Substantial Evidence

Plaintiff contends that because the ALJ gave all five opinions in the record only "limited weight," there was not substantial evidence in the record to support the RFC determination. The Court disagrees. Even when an ALJ affords only limited weight to all the opinions in the record, there can still be substantial evidence to justify the ALJ's RFC determination. See William B. v. Comm'r of Soc. Sec., No. 20-CV-6511S, 2022 WL 278180, at *4 (W.D.N.Y. Jan. 31, 2022) ("Plaintiff's argument that the ALJ improperly 'crafted an opinion based on his own lay opinion rather than substantial evidence' because he gave diminished weight to all the opinions of record is unavailing. It is the ALJ's task to formulate an RFC based on the record as a whole, and the ALJ was not required to base its RFC on the opinion of any one provider."). Here, there was substantial evidence before the ALJ—including the objective mental status evaluations, Plaintiff's participation and progress in PROS, the evidence of his activities, and the opinion evidence—that justified the ALJ's RFC determination. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 9 (2d Cir. 2017) (finding—where the ALJ gave limited weight to the only medical opinion about mental limitations in the record—that there was still sufficient evidence to support the ALJ's RFC determination, including the underlying treatment records that "provide[d] contemporaneous medical assessments of Monroe's mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity").

---

[5] In addition to the numerous reasons set out by the ALJ, the Court notes that the timing of Nurse Mitchell's June 2017 opinion was a further reason not to rely heavily on her opinion in determining Plaintiff's RFC. Nurse Mitchell's opinion predated Plaintiff's participation in the PROS program, which, as the ALJ noted, was helpful in improving Plaintiff's social functioning. Additionally, the objective mental status evaluations Dr. Arango performed in the second half of 2018—which the ALJ cited in addressing Dr. Arango's opinion—also post-dated Nurse Mitchell's June 2017 opinion.

The ALJ's RFC determination—based on the ALJ's findings of moderate limitations in four areas of mental functioning—was supported by substantial evidence. As the Second Circuit explained in Matta v. Astrue, 508 F. App'x 53 (2d Cir. 2013), an ALJ's RFC determination is not required to "perfectly correspond with any of the opinions of medical sources" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Id. at 56; see also Anthony C. v. Comm'r of Soc. Sec., No. 19-CV-0688 CJS, 2021 WL 492432, at *8 (W.D.N.Y. Feb. 10, 2021) (finding that ALJ did not err in concluding that the plaintiff had only moderate limitations in interacting with other people even though neither medical opinion in the record opined that plaintiff had moderate limitations).

Plaintiff's other challenges to the ALJ's RFC determination are all unavailing. For example, contrary to Plaintiff's claim, the ALJ did not cherry pick one or two isolated treatment notes to justify his RFC determination. Dr. Arango's objective mental status evaluations—which covered the six months leading up to the hearing before the ALJ—indicated, with very limited exception, consistent normal findings throughout the period he treated Plaintiff.

### 3. The ALJ's Credibility Determination

Plaintiff critiques both the form and substance of the ALJ's "credibility" determination.

"[A] finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligent plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988). The ALJ must also "assess subjective evidence in light of objective medical facts and diagnoses." Id. at 261. When a claimant's statements about his symptoms and limitations suggest a greater restriction of function than is demonstrated by the objective medical evidence, the Commissioner considers the following factors that are relevant in assessing a claimant's credibility: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of

16

pain or other symptoms; (iii) the precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment other than medication used for relief of paid or other symptoms; (vi) any measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restriction due to pain or other symptoms. 20 C.F.R. § 416.929(c)(i)-(vii). Even if an ALJ does not explicitly recite these factors, "[t]he ALJ's credibility determination must be supported by substantial evidence." Leavitt v. Astrue, 08-CV-731S, 2010 WL 419970, at *4 (W.D.N.Y. Jan. 29, 2010); see Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) ("Although the ALJ did not explicitly recite the seven relevant factors, his credibility determination was supported by substantial evidence in the record.").

Here, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16.) The ALJ then proceeded in the next paragraph to list various points from the record, including: (1) Plaintiff's lack of psychotic symptoms or psychiatric hospitalizations; (2) the fact that Plaintiff noted "some improvements with medications"; (3) Plaintiff's attendance at PROS three times a week and his improved social functioning, including talking with others between groups; and (4) the observations from Plaintiff's consultative examination.[6] The ALJ concludes that based on all the evidence in the record, including Plaintiff's hearing testimony, he has "moderate limitations in mental functioning." (Tr. 16.) While not a model of clarity, the ALJ's analysis was sufficient and is supported by substantial evidence, including the objective mental status evaluations of Dr.

---

[6] Plaintiff contends that the ALJ's reference to Dr. Herman's consultative examination makes little sense because the ALJ only gave Dr. Herman's opinion limited weight. However, the ALJ's discussion of the consultative examination in this section focuses on the Dr. Herman's observations and mental status evaluations rather than on Dr. Herman's ultimate opinion that Plaintiff has only mild limitations. In a subsequent section of his decision, the ALJ gave limited weight to Herman's ultimate opinion that Plaintiff had only "mild" limitations.

17

Arango, Plaintiff's participation in and progress with the PROS program, and Plaintiff's daily activities, including cleaning inside the house, doing yardwork, mowing the lawn, and playing a multi-player online video game.

Although the ALJ's reasoning could have been better articulated and more thorough, it is clear to the Court that the ALJ's credibility finding was amply based on the record. See Battaglia v. Berryhill, 17-CV-3852, 2018 WL 1054371, at *4 (E.D.N.Y. Feb. 23, 2018) ("[I]t would have made for easier review if the ALJ had written: 'I find plaintiff not credible for the following reasons,' and then listed each of the points set forth above.  But most of these are in her decision, and no particular stylistic form is required to facilitate judicial review.  Under these circumstances, remanding for a re-determination of credibility would be a futile gesture.  The ALJ's determination of credibility was amply based on the record.").  Remand for clarification as to which specific statements the ALJ found incredible, and why, is unnecessary.

### III.   CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Rule 12(c) motion and grants the Defendant's Rule 12(c) cross-motion.  The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: February 7, 2023
       Central Islip, New York

                                       /s/  (JMA)
                                       JOAN M. AZRACK
                                       UNITED STATES DISTRICT JUDGE